**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHRISTINA PETRIE,

                              Plaintiff,                    6:22-cv-123
                                                           (ECC/ML)
v.

NEW YORK STATE OFFICE OF MENTAL
HEALTH CENTRAL NEW YORK
PSYCHIATRIC CENTER, et al.,

                              Defendants.

_____

Joseph A. DeTraglia, Esq., *for Plaintiff*
Stacey A. Hamilton, Asst. Att'y Gen., *for Defendants CNYPC, Helmer and Palmer*
Frank Policelli, Esq., *for Defendant Calkins*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

        Plaintiff Christina Petrie brings this employment discrimination action against Defendants

New York State Office of Mental Health Central New York Psychiatric Center (CNYPC), CNYPC

Director of Nursing Lisa Helmer, CNYPC Assistant Director of Nursing Rosemary Palmer, and

Scott Calkins.  Dkt. No. 4.  Plaintiff alleges the Defendants subjected her to a hostile work

environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), *as

amended*, 42 U.S.C. § 2000e et seq., the Equal Protection Clause of the Fourteenth Amendment,

42 U.S.C. § 1983, and the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 290

et seq.  *Id.* at ¶¶ 95-117.  Presently before the Court is Defendants CNYPC, Helmer, and Palmer's

(collectively, the Moving Defendants) motion for summary judgment, and Plaintiff's motion for

partial summary judgment, under Rule 56 of the Federal Rules of Civil Procedure.  Dkt. Nos. 68,

70, 71, 73, 74, 75, 76, 77, 79.  The motions are fully briefed.  Dkt. Nos. 82, 83, 84, 85, 86, 87, 93, 94, 95, 97.  For the following reasons, the Moving Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiff's motion for partial summary judgment is denied.

## II.     FACTS[1]

In August 2019, Plaintiff was hired by CNYPC for the position of Registered Nurse 1 and began employment as a probationary employee.  Dkt. No. 85 ¶¶ 1, 2.  Defendant Scott Calkins, who at the time was employed by CNYPC as a Registered Nurse 2, trained Plaintiff during her period of formal orientation in the summer and fall of 2019.  Dkt. No. 83 ¶¶ 6, 10.  After completing orientation, Plaintiff began regularly working the 3:00 PM to 11:30 PM shift.  *Id.* at ¶ 7.  Calkins worked the same shift.  *Id.* at ¶ 31.

Plaintiff asserts that between November 2019 and January 2020, Calkins engaged in a series of sexually harassing behaviors, including grabbing Plaintiff's hand and rubbing her wedding band, stroking Plaintiff's face, rubbing Plaintiff's head and face, sexually commenting on Plaintiff's body, inviting Plaintiff to sit on his lap and asking Plaintiff if she was a "cuddler," hugging Plaintiff with unzipped pants, repeatedly asking Plaintiff to accompany him to the gym, and frequently visiting Plaintiff and calling her at work without a work-related purpose.  Dkt. No. 83 ¶ 8.  Plaintiff asserts that this behavior interfered with her ability to perform her job.  *Id.* at ¶ 9.

On January 22, 2020, Plaintiff informed nonparty CNYPC Nurse Administrator Kathleen Zielinski (NA Zielinski) that Calkins had engaged in sexually harassing behavior toward her.  Dkt.

---

[1] The facts are drawn from Plaintiff's Statement of Material Facts, Dkt. No. 70-1, and Response to Defendants' Statement of Material Facts and Statement of Additional Material Facts, Dkt. No. 85, as well as Defendants' Statement of Material Facts, Dkt. No. 73, and Response to Plaintiff's Statement of Material Facts, Dkt. No. 83, to the extent the facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein.

No. 83 ¶ 13.  The following day, NA Zielinski emailed, among other people, Defendants Director of Nursing Lisa Helmer and Assistant Director of Nursing Rosemary Palmer, notifying them of Plaintiff's complaint.  *Id.* at ¶ 14; Dkt. No. 85 ¶ 83.  Helmer advised NA Zielinski that she was required to "report this information."  Dkt. No. 85 ¶ 84.  Plaintiff asked NA Zielinski not to report the complaint, but on January 23rd NA Zielinski contacted and left a message with the Governor's Office of Employee Relations (GOER) Affirmative Action Administrator for CNYPC to report the information conveyed by Plaintiff.  *Id.* at ¶ 86.  Helmer followed up with NA Zielinski on January 28th, who had not yet received a response from GOER.  *Id.* at ¶ 87.  Helmer directed NA Zielinski to complete the discrimination/harassment complaint form available on the CNYPC homepage and submit it to GOER.  *Id.*  The same day, Helmer sent an email to nonparty CNYPC human resource (HR) representative Heather Adamo to ensure that HR was aware of Plaintiff's complaint.  *Id.* at ¶ 89.  GOER acknowledged receipt of the complaint on February 7, 2020.  Dkt. No. 85 at ¶¶ 15, 16.

Plaintiff asserts that Calkins continued to sexually harass her after January 22, 2020, including an instance when he "rub[bed] her hair and head in an elevator, and he continued to make her feel extremely uncomfortable at work."  Dkt. No. 83 ¶ 17.  She also asserts that on February 13, 2020, Calkins put his arms around Plaintiff and a female coworker, at which time Plaintiff "immediately told him no hugs, and he then kissed her on the top of [her] head[.]"  *Id.* at ¶ 19.  On their lunch break that day, Calkins "sat down next to [Plaintiff] and put his arm around her and hugged her.  [Plaintiff] told him again not to hug her."  *Id.* at ¶ 20.  Calkins later made a comment suggesting he knew the make and model of Plaintiff's car.  *Id.*  Later that day, Calkins sent Plaintiff and another female coworker an email stating, "As part of the girls club I am officially inviting you to a sleep over tomorrow after work.  Food and beverages to be provided.  Sorry a

fellow gal could not make up my mind about when and what to do.  RSVP, Scott."  *Id.* at ¶ 21.

Plaintiff asserts, and the Moving Defendants deny, that additional incidents occurred in February 2020, including Calkins coming to Plaintiff's office, dropping his keys on the floor, then dancing "sexually" directly behind a female co-worker who bent over to pick up his keys, making physical contact; and Calkins specifically waiting at a door for Plaintiff while leaving an emergency incident at CNYPC.  Dkt. No. 83 ¶ 22.

On February 18, 2020, Plaintiff filed a complaint of sexual harassment with GOER on her own behalf.  Dkt. No. 83 at ¶ 23.  That day, Plaintiff also emailed a list of interactions she had with Calkins to two CNYPC Nurse Administrators.  *Id.* at ¶ 24.  On February 25, 2020, CNYPC moved Calkins to work in "ward 505," which was "on a different floor on a different side" of the building in which Plaintiff and Calkins had previously been assigned to work.  Dkt. Nos. 83 ¶¶ 37, 53; 79-8 at 2; 68-3 at 130.  Plaintiff contends that because she and Calkins continued to be assigned to the same shift in the same building at CNYPC, she had to interact with him at various times throughout her work day, including in the sign in/sign out room at the beginning and end of every shift, in the key pick-up room, on the nursing wards and in patients rooms, in the facility's hallways, stairwells, elevators, lunch room, and parking lot, and when responding to patient emergencies.  *Id.* at ¶ 47.

Plaintiff asserts that on February 25, 2020, Calkins repeatedly called her during her work shift "telling her that he missed her."  Dkt. No. 83 ¶ 28.  On February 26th, Helmer disagreed with adjusting Plaintiff's hours.  *Id.* at ¶ 30.  Plaintiff asserts that Calkins called her at work on February 29, 2020, a day that he was not working, without a work-related reason for doing so.  *Id.* at ¶ 33.

Calkins was out of work on family medical leave from March 4 through March 27, 2020.  Dkt. No. 85 ¶ 19.  Plaintiff contacted GOER on April 11th to report "that she felt as though the investigation had gone on too long."  *Id.* at ¶ 187.  Plaintiff asserts that on April 28th, she was alone

in the sign in/sign out room with Calkins.  Dkt. No. 83 ¶ 38.  Plaintiff sent an email to Palmer reporting that they had put Calkins "on this side of the building today."  *Id.* at ¶ 39.

On April 29, 2020, Plaintiff was informed that her next shift would be in Building 41.  Dkt. No. 83 ¶ 40.  Plaintiff contends that prior to April 29th, she had regularly worked in Building 39, which was a preferable assignment over Building 41.  *Id.* at ¶ 41.  The Moving Defendants contend that Plaintiff did not have, and was not entitled to, a "regular" assignment at CNYPC, to the extent that she was not hired to work a particular location within CNYPC, and she did not know where she would be assigned on any given day and until she arrived to work and retrieved her assignment sheet for the day.  Dkt. No. 85 ¶¶ 63-67, 99-109, 129-30.

Plaintiff was out of work on leave from April 29 through May 28, 2020.  Dkt. No. 85 ¶ 20.  The parties dispute the underlying reasons for Plaintiff's leave.  *Id.* at ¶¶ 183-84.  On May 5, 2020, Plaintiff met with state troopers to complain about the events occurring at her workplace and her allegations against Calkins.  Dkt. Nos. 83 ¶ 48; 85 ¶ 186.

Calkins was out of work on workers' compensation leave from May 29 through June 3, 2020.  Dkt. No. 85 ¶ 21.  Calkins was interviewed by GOER regarding Plaintiff's complaint on June 4, 2020.  Dkt. No. 83 ¶ 50.

On June 17, 2020, Plaintiff filed a complaint with the New York State Division of Human Rights (NYSDHR) against Helmer, citing to a failure to protect her from retaliation at work and retaliation for filing a complaint of sexual harassment.  Dkt. No. 97-2.  On July 20, 2020, GOER issued a draft investigative report (DIR), finding that Plaintiff's allegations that Helmer violated agency policy prohibiting retaliation in the workplace for opposing discrimination in the workplace was substantiated.  Dkt. No. 74-10.  Helmer subsequently received "formal counseling." Dkt. No. 83 ¶¶ 44-45.

On July 13, 2020, GOER issued a DIR concerning Plaintiff's complaint against Calkins, finding that Plaintiff's allegations that Calkins violated agency policy prohibiting sexual harassment discrimination in the workplace were substantiated, and recommending that administrative action be taken.  Dkt. No. 74-11.

On July 17, 2020, the CNYPC HR department received a Workplace Violence Report against Plaintiff.  Dkt. No. 85 ¶ 26.  A complaint was subsequently filed with GOER against the Plaintiff.  *Id.* at ¶ 30.  GOER conducted an investigation and issued a DIR on August 13, 2020, finding that allegations Plaintiff violated CNYPC policy were substantiated.  *Id.* at ¶ 32.

On August 6, 2020, Plaintiff received her fourth probationary evaluation.  Dkt. No. 97-1. Out of ten categories, Plaintiff received "satisfactory" under six categories and "needs improvement" under four categories.  *Id.*  The August 2020 evaluation also recommended that Plaintiff continue her probation period "due to being absent from work for 29 days during this evaluation period," as allowed by CNYPC's policy.  Dkt. Nos. 97-1; 85 ¶¶ 7, 29, 205.  Plaintiff refused to sign the evaluation.  Dkt. No. 97-1.

On August 21, 2020, Plaintiff was informed that she failed to meet the minimum standards as a probationary employee at CNYPC, and that she was being terminated effective August 29th. Dkt. No. 85 ¶ 33.  Plaintiff requested and received a probationary termination hearing, after which Plaintiff's termination was confirmed.  *Id.* at ¶¶ 35-38.

In October 2020, Plaintiff filed a second complaint with GOER against Helmer surrounding her termination.  Dkt. No. 85 ¶ 39.  GOER issued a DIR in relation to this complaint on October 23, 2020, finding that Plaintiff's probation was extended due to the number of her absences, and finding that significant factors in Plaintiff's termination were Plaintiff engaging in retaliation against a witness for engaging in protected activity, as well as performance issues.  *Id.*

at ¶ 44.  Plaintiff contends that these findings were wrong, inasmuch that they identified pre-textual bases for Plaintiff's termination and did not conclude that retaliation was a "significant factor" in her termination.  *Id.*

On December 31, 2020, CNYPC issued a Notice of Discipline (NOD) to Calkins, listing ten charges of misconduct and notifying him that he was suspended, without pay, effective immediately.  Dkt. No. 85 ¶¶ 45-46.  The NOD indicated a proposed penalty of termination.  *Id.* at ¶ 47.  Calkins appealed the NOD and filed a demand for arbitration pursuant to his union rights.  *Id.* at ¶ 48.  The arbitrator ultimately found that there was just cause to discipline Calkins for two out of the nine charges in the NOD, and held that the appropriate penalty for the proven charges was a five-day suspension without pay.  *Id.* at ¶¶ 49-51.  On October 3, 2021, Calkins resigned from CNYPC.  *Id.* at ¶ 52.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).

Where, as here, both parties have filed motions for summary judgment, "the court must evaluate each party's motion on its own merits." *Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting *Schwabenbauer v. Bd. of Educ. of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The moving party may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))). If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In ruling on a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine

issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV.    DISCUSSION

### A.    Defendants' Motion for Summary Judgment

#### 1.    Title VII Claims – Individual Liability

The Moving Defendants argue that Helmer and Palmer are entitled to judgment as a matter of law on Plaintiff's Fifth and Sixth Claims alleging deprivation of rights under Title VII against the Defendants in their individual capacities, as "enforceable through . . . 42 U.S.C. § 1983," because individuals are not subject to liability under Title VII. Dkt. No. 68-2 at 11. Plaintiff does not address this argument in her opposition papers. Dkt. No. 86. In Plaintiff's reply papers on her own motion seeking partial summary judgment, Plaintiff argues that because Helmer and Palmer each "took actions" against the Plaintiff, Plaintiff has raised a triable issue of fact to support individual liability claims under 42 U.S.C. § 1983. Dkt. No. 95.

"A plaintiff who claims sex discrimination in public employment in violation of the Fourteenth Amendment may bring suit pursuant to § 1983." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019) (citing *Raspardo v. Carlone*, 770 F.3d 97, 113–14 (2d Cir. 2014) ("[S]tate and local officials can be held individually liable under 42 U.S.C. § 1983 for violating the Equal Protection Clause of the Fourteenth Amendment by discriminatory acts against those who work under them.")). "Such § 1983 discrimination claims parallel Title VII discrimination claims in many respects." *Id.* (citation omitted). However, despite their similarities, "§ 1983 and Title VII claims differ in important ways." *Id.* (citing *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225–26 (2d Cir. 2004) (enumerating several differences between Title VII and § 1983 claims). Among those "crucial distinction[s]" is that "unlike a Title VII claim, which may be brought only against the employing entity, a § 1983 claim 'can be brought against an[y] individual' responsible for the

9

discrimination." *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015)).

Plaintiff's Fifth Claim is captioned "Deprivation of Rights Under Title VII Due to a Hostile Work Environment (Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983)." Dkt. No. 4 ¶¶ 103-04. Plaintiff's Sixth Claim is captioned "Deprivation of Rights Under Title VII Due to Retaliation (Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983)." *Id.* at ¶¶ 105-06. Plaintiff purports to assert both her Fifth and Sixth Claim "against all defendants in their individual capacities." *Id.* at ¶¶ 103-06. While Plaintiff can, and does, plead concurrent Title VII and § 1983 claims, these claims derive from different sources of substantive rights and are not properly pled as one. To the extent Plaintiff intends to plead a § 1983 claim against the Defendants in their individual capacities, she does so in her Third and Fourth Claims, alleging individual liability under § 1983 for violating the Equal Protection Clause of the Fourteenth Amendment. *See Oliver v. New York State Police*, No. 1:15-cv-00444 (BKS/DJS), 2020 WL 1989180, at *45 (N.D.N.Y. Apr. 27, 2020), *aff'd sub nom. Oliver v. D'Amico*, No. 22-979, 2024 WL 2013670 (2d Cir. May 7, 2024) ("'[T]he Equal Protection Clause protects such employees from sex-based workplace discrimination, including hostile work environments and disparate treatment,' and retaliation.") (quoting *Raspardo*, 770 F.3d at 114).

However, as the Moving Defendants correctly assert, individuals are not subject to liability under Title VII. *See Sassaman v. Gamache*, 566 F.3d 307, 315–16 (2d Cir. 2009) (dismissing Title VII complaint with respect to the plaintiff's former supervisor because "individuals are not subject to liability under Title VII"); *Sears-Barnett v. Syracuse Cmty. Health Ctr., Inc.*, 531 F. Supp. 3d 522, 535 (N.D.N.Y. 2021) (The Second Circuit has left no doubt that 'individuals are not subject to liability under Title VII'") (quotation omitted). Thus, to the extent Plaintiff's Fifth and Sixth

Claims seek to impose individual liability under Title VII, summary judgment dismissing these claims is warranted.[2]

### 2.    Title VII – Hostile Work Environment – CNYPC

The Moving Defendants argue that Plaintiff's Title VII hostile work environment claim must be dismissed because the majority of Calkins's harassing behavior occurred prior to CNYPC receiving notice, and Calkins's subsequent conduct was not sufficiently severe or pervasive.  Dkt. No. 68-2 at 12-24.  Plaintiff disagrees.  Dkt. No. 85.

To establish a hostile work environment claim under Title VII, Plaintiff must demonstrate harassment on the basis of her sex, 42 U.S.C. § 2000e-2(a), and "that [] her workplace was 'so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of . . . her employment were thereby altered.'" *Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020) (quoting *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013)).  The hostile work environment standard includes "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo*, 770 F.3d at 114. "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

A plaintiff must also show "a specific basis for imputing the hostile work environment to

---

[2] Although Defendant Calkins has not made a proper cross-motion for summary judgment on Plaintiff's Fifth and Sixth Claims asserting individual liability against him under Title VII, in the interest of justice and for the sake of judicial efficiency this Court sua sponte grants summary judgment in his favor as to these claims.

the employer." *Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 2001). The standard for imposing liability on an employer for workplace harassment by employees depends on the status of the harasser:

> If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action . . . the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Vance v. Ball State U.*, 570 U.S. 421, 424 (2013) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998)).

To establish an employer's negligence in controlling workplace conditions, a plaintiff must demonstrate that her employer: (i) "failed to provide a reasonable avenue for complaint"; or (ii) "knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)). The second basis for establishing liability "requires a plaintiff to show that (1) someone had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Duch*, 588 F.3d at 763. Courts judge whether a "response was reasonable . . . from the totality of circumstances." *Distasio*, 157 F.3d 55, 65 (2d Cir. 1998).

### a.    Severe or Pervasive

"Title VII does not impose 'a general civility code for the American workplace.'" *McNamara v. County of Saratoga*, 748 F. Supp. 3d 68, 89 (N.D.N.Y. Sept. 12, 2024) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *Russo v. New York Presby*,

972 F. Supp. 2d 429, 447 (Sept. 23, 2013 E.D.N.Y.) ("While 'the central statutory purpose [of Title VII was] eradicating discrimination in employment, Title VII does not set forth a general civility code for the American workplace.'" (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012))). Examples of conduct prohibited by Title VII include: "sexual assaults; [other] physical contact[, whether amorous or hostile, for which there is no consent express or implied]; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures." *Redd*, 678 F.3d at 177 (citations omitted) (alterations in original). Conduct that does not fall under Title VII's protection includes "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers," *see id.*, as well as "rudeness and excessive criticism of a plaintiff or her work," *Saraceni v. Retting*, 726 F. Supp. 3d 101, 122 (N.D.N.Y. 2024) (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297, 321 (2d Cir. 2015)). "Sex-based hostile work environment claims may be supported by facially sex-neutral incidents and 'sexually offensive' acts may be facially sex-neutral." *Moll*, 94 F.4th at 229 (citations omitted).

Here, Plaintiff has offered evidence of incidents of discriminatory harassment by Calkins beginning in November 2019 and continuing until the end of February 2020 that, when viewed as whole and in the light most favorable to Plaintiff, could allow a reasonable factfinder to conclude that the environment was objectively hostile and abusive. Specifically, Plaintiff has offered evidence that during this period Calkins subjected her to repeated harassment including sexual comments, unwanted touching, seeking her out and/or calling her for no work-related purpose to tell her that he "missed" her, and sending Plaintiff an email requesting that she "sleepover" with him. There is also evidence that Calkins directed lewd conduct toward another coworker in Plaintiff's presence. *See Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001) (recognizing that evidence of harassment directed at other co-workers can be relevant to an

employee's own claim of hostile work environment discrimination, because the crucial inquiry focuses on the nature of the workplace environment "*as a whole*").  The record also contains evidence suggesting that Plaintiff found Calkins's harassment subjectively hostile and abusive, including reports by Plaintiff's supervisors and/or coworkers that Plaintiff was "extremely upset and losing sleep," and Plaintiff's contention that she took an extended period of leave in May 2020 due, in part, to the continued harassment.

The Moving Defendants argue that the proper inquiry on summary judgment is whether, and to what extent, Calkin's purportedly harassing conduct occurred *after* notice was provided to CNYPC; and whether that post-notice conduct was severe or pervasive enough to establish a hostile work environment.  This argument is misplaced.  While relevant to the inquiry of whether Calkins's conduct can properly be imputed to CNYPC, Plaintiff is not so limited in establishing whether the work environment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.  In sum, Plaintiff has raised a genuine issue of material fact as to whether she suffered a gender-based hostile-work environment.

### b.    Imputing Conduct to CNYPC

Having found that a reasonable jury could find the existence of a hostile work environment, the Court must determine whether Plaintiff has produced evidence providing "'a specific basis for imputing the conduct creating the hostile work environment to" CNYPC.  *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (internal quotation marks omitted)).

The Moving Defendants contend that for purposes of this analysis, Calkins should be characterized as a "co-worker," triggering the negligence standard.  The Court agrees.  In *Vance*, the Supreme Court held that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against

14

the victim." 570 U.S. at 424.  A tangible employment action constitutes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. (quoting *Ellerth*, 524 U.S. at 761).

Here, there is nothing in the record to suggest that Calkins was, or ever acted in the capacity of, Plaintiff's supervisor.  At all relevant times, Plaintiff was employed by CNYPC in the position of a Nurse I, and Calkins in the position of Nurse II.  Defendants have offered evidence that Nurse Administrators were responsible for the direct supervision of all nursing staff at CNYPC.  Dkt. Nos. 76 ¶¶ 13-14; 77 ¶ 11. Plaintiff testified that Nurse Administrator Nancy Coons was her immediate supervisor throughout the course of her employment with CNYPC.  Dkt. No. 68-3 at 81.  Although Calkins was one of several Nurse II employees who trained Plaintiff during her orientation, the record is devoid of evidence that Calkins was empowered to take any tangible employment action against Plaintiff at any point.  On this record, no reasonable juror could conclude that Calkins was Plaintiff's supervisor for purposes of the Title VII analysis.  Accordingly, the relevant inquiry is whether CNYPC failed to provide a reasonable avenue for Plaintiff's complaint about Calkins's alleged harassment, or knew or should have known about the harassment yet failed to take appropriate remedial action.

Plaintiff does not contend that CNYPC lacked a reasonable avenue for her complaints, and the record establishes that CNYPC had both an anti-harassment policy and a complaint procedure in place, which Plaintiff utilized.  *See Duch*, 588 F.3d at 763 (holding that "no reasonable jury could conclude that defendants failed to provide [plaintiff] with a reasonable avenue of complaint" where employer provided "numerous alternative avenues of complaint that [plaintiff] could, and eventually did, pursue").  The Moving Defendants' motion therefore turns on whether, as a matter

of law, CNYPC took appropriate remedial action in response to Plaintiff's complaints.

"The appropriateness of an employer's remedial action must be assessed from the totality of the circumstances." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014). "Factors to be considered in this analysis are the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) (citation omitted). Additionally important to the inquiry is whether the employer's action was effective and prompt. *See Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 329 (N.D.N.Y. 2013) ("If the employer is found to have been on notice of the sexual harassment, summary judgment is inappropriate where there is evidence that presents an issue of fact as to whether the employer's action was effectively remedial and prompt.").

There is no dispute that there came a time in January 2020 that CNYPC was put on notice of the alleged harassment, and almost immediately submitted a formal complaint to GOER to commence an investigation into Plaintiff's allegations. Nevertheless, on this record a reasonable jury could conclude that CNYPC's remedial actions were deficient, and that CNYPC was negligent in controlling its workplace conditions. Calkins was not interviewed in conjunction with the investigation until four months after the initial complaint was lodged, and the entire investigation took a total of five months before the DIR recommending administration action against Calkins was issued. To be sure, other courts to consider the issue have found that "a remedial action begins with the investigation, and thus the timeline to reach a conclusion is not as determinative when the employer actively investigates the claim." *Sears-Barnett*, 531 F. Supp. 3d at 537 (citing *Allen v. Babcock & Wilcocx Tech. Servs. Pantex, LLC*, No. 2:12-cv-225, 2013 WL 5570192, at *11 (N.D. Tex. Oct. 9, 2013)) (noting that remedial action was prompt because

16

employer began investigation by convening meeting to determine reasonable next steps). However, the distinguishing factor in these cases is that the Plaintiff provided no evidence of further harassment in the intervening period between complaint and remedial action, i.e. during the investigation period.  Here, Plaintiff has offered evidence that while the months-long investigation of the complaint(s) was pending, Calkins's harassing conduct did not abate.  There is also record evidence that, notwithstanding Calkins's continued harassment and the concern for Plaintiff's well-being expressed by supervisors who worked with Plaintiff, CNYPC would not agree to modify Plaintiff's schedule or transfer Calkins to a different building while the investigation was pending.  Viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could conclude that CNYPC failed to take effective remedial measures within its control.  *See Howley v. Town of Stratford*, 217 F.3d 141, 156 (2d Cir. 2000) ("the fact that [incidents of harassment] continued and were gender-based, if proven, is relevant to the question of the appropriateness of the Town's response to Howley's complaints."); *Harlow v. Molina Healthcare, Inc.*, 723 F. Supp. 3d 116, 130 (N.D.N.Y. 2024) (finding triable issue of fact as to whether conduct may be imputed to defendant where harassment continued despite issuance of a verbal warning).  Accordingly, the Moving Defendants' motion for summary judgment on Plaintiff's Title VII hostile work environment claim against CNYPC is denied.

### 3.    Title VII – Retaliation – CNYPC

The Moving Defendants argue that Plaintiff has failed to establish a prima facie case of retaliation, and that CNYPC has articulated legitimate, nonretaliatory reasons for any and all actions that Plaintiff alleges were retaliatory.  Dkt. No. 68-2 at 28-39.  Plaintiff argues that she has raised triable issues of material fact.  Dkt. No. 86 at 4-5.

Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an

unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Title VII retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73–74 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation by showing evidence that: (1) she engaged in protected activity; (2) the defendant was aware of the activity; (3) the defendant took an adverse employment action against her; and (4) there is a causal connection between the protected activity and the adverse action. *Summa*, 708 F.3d at 125. If the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that a legitimate, non-retaliatory reason existed for its action. *Id.* at 129. If the employer demonstrates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to show "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

### a.    Prima Facie Case

### i.    Protected Activity

Plaintiff argues that she engaged in protected activity in January 2020, when she complained of workplace sexual harassment, and on June 17, 2020, when she filed a complaint with the New York State Division of Human Rights against Helmer for failing to protect her from retaliation at work and retaliation for filing a complaint of sexual harassment. Dkt. No. 86 at 4-5. The Moving Defendants do not dispute that Plaintiff engaged in activity protected under Title VII by filing these complaints, and the Court agrees that they constituted protected activity under the statute. *See Hubbard v. Total Communs. Inc.*, 347 F. App'x 679, 680–81 (2d Cir. 2009) ("'Protected activity' includes opposition to a discriminatory employment practice or participation

in any investigation, proceeding, or hearing under Title VII" and "a plaintiff . . . need not prove that the conditions she protested amounted to an actual Title VII violation; she need only establish that she had a good faith, reasonable belief that a violation occurred." (first citing 42 U.S.C. § 2000e-3(a), and then citing *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999))).  Plaintiff also filed a formal complaint of sexual harassment in February 2020, which further constitutes protected activity under Title VII.

Further, "opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection." *Oliver*, 2020 WL 1989180, at *38 (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).  "Instead, 'opposition' includes activities such as making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Id.* (cleaned up).  Here, viewing the facts in the light most favorable to the non-moving party, the record contains other instances that may qualify as protected activity by Plaintiff, including her February 2020 calls and emails to supervisors reporting interactions with Calkins, securing legal counsel to send letters to CNYPC on her behalf opposing her allegedly retaliatory transfer in April 2020, and meeting with the New York State Police to complain about Calkins harassment in May 2020.

### ii.    Awareness of Protected Activity

The Moving Defendants do not dispute that CNYPC was aware of the alleged protected activities.

### iii.    Adverse Action

Plaintiff argues that she suffered an adverse action when (1) she was assigned to work in Building 41, (2) her co-worker filed a retaliation complaint against her, (3) she received a negative

performance review, and (4) she was terminated.  Dkt. No. 86 at 4-5.[3]

For purposes of a Title VII retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington Northern v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Id.* (quoting *Burlington Northern*, 548 U.S. at 64) (alterations in original). The Supreme Court has explained that it has:

> phrase[d] the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters.  "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.

*Burlington Northern*, 548 U.S. at 69 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)).  To determine "whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

Here, the majority of the incidents alleged by Plaintiff – the retaliation complaint against

---

[3] Plaintiff's opposition papers do not specifically articulate her position on what constituted adverse actions for purposes of the Court's retaliation analysis, nor the sufficiency of any adverse actions considered independently versus in the aggregate.  To the extent Plaintiff has made passing references to the adverse actions listed herein, the Court will consider them in its analysis. However, as a general matter it is not the Court's duty to make a counseled plaintiff's case for them by scouring the record for potential adverse actions.

her, negative performance review, and her termination – if true, may independently amount to adverse actions.  *See Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) ("Examples of materially adverse changes include termination of employment . . . ."); *Herrera v. Syracuse Univ.*, No. 5:24-cv-245 (AMN/ML), 2025 WL 874734, at *13 (N.D.N.Y. Mar. 20, 2025) ("[A]s a general matter, a reasonable worker could be dissuaded from filing [a charge of discrimination] if she was subjected to a negative performance review or "termination" of the type described by Plaintiff."); *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011) ("a reasonable jury could conclude that the letter of reprimand constitutes retaliation").

On the other hand, Plaintiff's assertion that she was assigned to a less desirable job duty, even when viewing the facts in the light most favorable to her, does not independently constitute an adverse action upon which Plaintiff can maintain her retaliation claim.  In *Burlington Northern*, the Supreme Court found that the reassignment of duties can constitute a retaliatory adverse action because "[c]ommon sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." 548 U.S. at 70–71. However, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Kessler v. Westchester Cnty. Dep't of Soc. Servs*., 461 F.3d 199, 209 (2d Cir. 2006) (quoting *Burlington Northern*, 548 U.S. at 71).

At the outset, the record calls considerable question into whether Plaintiff was ever "reassigned" job duties.  In response to Plaintiff's claim that her reassignment to Building 41 was a materially adverse action, the Moving Defendants have offered undisputed evidence that at

CNYPC, the nursing schedule was posted daily, and each nurse had to view the nursing schedule on a daily basis to know where they were assigned to work on that particular day.  Dkt. No. 85 ¶ 55.  It is further undisputed that nurses hired to work at CNYPC were hired for the entire facility, meaning that on any given day they could be assigned to, and were trained for, both the programming in Building 39 and Building 41.  Dkt. No. 85 ¶ 63.  Although Plaintiff contends that she was "regularly and routinely" assigned to Building 39, she admits that assignments "could change," and that when Plaintiff was hired, she was told she would work in Building 41, and in fact had voluntarily covered shifts for other nurses in Building 41, and worked in Building 41 "many times" during her period of employment at CNYPC.  Dkt. No. 85 ¶¶ 56, 96, 108, 109.

Moreover, even if the Court were to construe the facts as establishing that Plaintiff was actually reassigned job duties, she has failed to raise a genuine dispute of material fact that the reassignment constitutes a materially adverse action.  The Moving Defendants' evidence suggests that Building 41 was a more desirable and preferred work location among the nurses at CNYPC, because there was less acuity, less emergencies, and it was a less active ward.  Dkt. Nos. 77 ¶¶ 35, 40, 44; 76 ¶¶ 26, 34.  Plaintiff does not specifically refute this evidence, and admits that the assignment in Building 41 would not result in any less pay to her or a change in title.  Dkt. No. 85 ¶ 181.  Plaintiff's only proffered basis to support a finding that an assignment to Building 41 was materially adverse is her sworn declaration that Building 41 was a "worse job assignment than [her] regular assignment in the south side of Building 39," because in April 2020 COVID-19 was "widespread" in Building 41 and the north side of Building 39.  Dkt. No. 85-2 ¶¶ 3-4.  However, Plaintiff's admission that COVID-19 exposure levels were "widespread" in both buildings undermines her argument that an assignment to Building 41 was any more dangerous than working in Building 39.  Furthermore, Plaintiff admits that she was still voluntarily engaging in "tour

exchanges" with other CNYPC nursing personnel in April 2020, and when Plaintiff volunteered for a tour exchange "she did not know where her assignment would be." Dkt. No. 85 ¶¶ 177-78.

Finally, it is undisputed that this particular assignment to Building 41 never came to fruition. Plaintiff admits she was "returned to her previous work assignment" after being out of work on leave in May 2020, without having taken on the assignment. Dkt. No. 85 ¶¶ 182-83. *See Jackson v. Syracuse City Sch. Dist.*, No. 5:19-cv-1188 (AMN/TWD), 2025 WL 255399, at *13 n. 25 (N.D.N.Y. Jan. 21, 2025) ("The fact that Plaintiff's placement at a middle school was temporary and reversed prior to her ever having to teach at the middle school, and that she agreed with her ultimate placement at a high school, indicates that there was no adverse employment action under any standard."); *Myers v. Doherty*, No. 21-cv-219, 2021 WL 5599502, at *8 (S.D.N.Y. Nov. 30, 2021), *aff'd*, No. 21-3012-CV, 2022 WL 4477050 (2d Cir. Sept. 27, 2022) (explaining that there was no adverse employment action in the context of a retaliation claim because although the plaintiff was notified of a potential future transfer, the transfer did not "materialize"); *see also Durkin v. Verizon New York, Inc.*, 678 F. Supp. 2d 124, 139 (S.D.N.Y. 2009) (explaining that "[i]n this Circuit, an action must actually occur to be considered an adverse employment action" and so "the threat to demote Plaintiff does not constitute an adverse employment action and therefore cannot support Plaintiff's claims of retaliation") (citing *Thomas v. Bergdorf Goodman, Inc.*, No. 03-cv-3066, 2004 WL 2979960, at *10 (S.D.N.Y. Dec. 22, 2004)). For all of these stated reasons, Plaintiff has failed to raise a genuine dispute of material fact that her assignment to Building 41 was not so materially adverse to independently sustain her Title VII retaliation claim.

As previously discussed, alleged acts of retaliation must be considered separately and in the aggregate, with attention paid to their context. *See Burlington Northern*, 548 U.S. at 69. Accordingly, considering the alleged adverse actions altogether, including Plaintiff's assignment

to Building 41, and viewing them in the light most favorable to the Plaintiff, the Court cannot find

that as a matter of law that they do not add up to an adverse action that might dissuade a reasonable

employee from making or supporting a charge of discrimination. *See Vega*, 801 F.3d at 92 ("Some

of these actions, considered individually, might not amount to much. Taken together, however,

they plausibly paint a mosaic of retaliation and an intent to punish Vega for complaining of

discrimination."); *see also Cusher v. Mallick*, No. 16-cv-1273, 2020 WL 109510, at *28 (N.D.N.Y.

Jan. 9, 2020) ("Taken together, the Court finds that the unit inspections, excessive scrutiny, and

office change to an inferior room could deter a similarly situated individual of ordinary firmness

from exercising his . . . rights.") (internal quotation marks and citations omitted).

### iv.    Causal Connection

"A causal connection in retaliation claims can be shown either (1) indirectly, by showing

that the protected activity was followed closely by discriminatory treatment, or through other

circumstantial evidence such as disparate treatment of fellow employees who engaged in similar

conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the

defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotation

marks omitted); *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection

needed for proof of retaliation 'can be established indirectly by showing that the protected activity

was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95

F.3d 1170, 1178 (2d Cir. 1996)); *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir.

2010) (recognizing that "[t]he temporal proximity of events may give rise to an inference of

retaliation for the purposes of establishing a prima facie case of retaliation under Title VII").

Here, Plaintiff has presented evidence of temporal proximity between her ongoing

complaints of harassment and retaliation, and the alleged adverse actions.  For example, Plaintiff

filed her NYSDHR complaint against Helmer in June 2020, and Plaintiff's employment was

terminated in August 2020, approximately three months later.  The Second Circuit has reasoned that timing within this range permits an inference of causality.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship."); *Summa*, 708 F.3d at 125 (finding causation where there was a seven-month gap between protected activity and adverse action); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (finding causation where there was an eight month gap between protected activity and adverse action).

The Court finds that the timing of the potential retaliatory incidents, together with the context in which these incidents took place, is sufficient to establish a causal nexus for purposes of establishing a prima facie case of retaliation. *See Summa*, 708 F.3d at 128 ("the combination of reasonably close temporal proximity and the particular context in this case is sufficient to infer causation in establishing a prima facie case of retaliation regarding the termination of [the plaintiff's] employment privileges at Hofstra."). Accordingly, Plaintiff has established a prima facie case of retaliation, and a presumption of retaliation arises.

### b. Legitimate, Non-Retaliatory Reasons

The burden now shifts to CNYPC to show a "legitimate, nondiscriminatory reason" for the adverse actions. *McDonnell Douglas*, 411 U.S. at 802. The burden "is not a particularly steep hurdle." *Hyek v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010).  It "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

### i.    Assignment to Building 41

CNYPC has satisfied its burden here with evidence – including affidavits from Helmer and Palmer – that the decision to reassign Plaintiff to Building 41 was made for her benefit, to the extent that it would limit her instances of contact with Calkins, who would remain in Building 39, and because Building 41 was a more desirable and preferred work location among the nurses at CNYPC, as there was less acuity, less emergencies, and it was a less active ward.  Dkt. Nos. 77 ¶¶ 35, 40, 44; 76 ¶¶ 26, 34.

### ii.    Complaint Against Plaintiff

CNYPC has further satisfied its burden at this stage with evidence offering a legitimate, nondiscriminatory reason for the filing and substantiating of a retaliation complaint against Plaintiff.  On July 17, 2020, Plaintiff's co-worker submitted a five-page workplace violence reporting form complaining that, among other things, Plaintiff was engaging in continued harassing behavior because the co-worker would not give a statement to the State Police about Calkins's conduct at CNYPC.  Dkt. Nos. 74 ¶ 19; 74-12.  CNYPC's safety department conducted an investigation of the complaint against Plaintiff and found that it did not meet the criteria for workplace violence.  Dkt. Nos. 74 ¶ 19; 74-13.  On August 4, 2020, a complaint concerning the same conduct was thereafter filed with GOER on the co-worker's behalf, based on retaliation.  Dkt. No. 74 ¶ 21.  On August 13th, GOER issued a DIR finding that the co-worker's allegations that Plaintiff violated CNYPC's policy prohibiting sexual harassment were substantiated.  Dkt. Nos. 74 ¶¶ 21-22; 74-15.  Thus, to the extent CNYPC has offered evidence that the filing and generation of the complaint was based on that co-worker's detailed allegations of harassing conduct by Plaintiff, and GOER's subsequent investigation into said allegations, which included interviews with multiple witnesses, CNYPC has satisfied its burden at this stage.

### iii.    Negative Performance Review

CNYPC has also satisfied its burden at this stage with evidence that Plaintiff's performance review finding that she "needed improvement" in various categories was based on Plaintiff's behavior and the performance of her duties, to the extent supervisory staff at CNYPC had documented consistent issues displayed by Plaintiff concerning "proper communication in the workplace, insubordination, and a poor attitude."  Dkt. Nos. 76-2; 76-3; 77 ¶¶ 49-51; 77-5; 77-9; 77-10; 77-11; 77-13; 77-15; 77-17.

### iv.    Termination

Last, CNYPC has satisfied its burden at this stage with evidence offering a legitimate, nondiscriminatory reason for Plaintiff's termination.  Specifically, in that "based on GOER's findings pursuant to its investigation" of the retaliation complaint against Plaintiff, Plaintiff was "informed that she failed to meet the minimum standards as a probationary employee at CNYPC, and that she was being terminated[.]"  Dkt. Nos. 74 ¶ 23; 74-16.

The Court finds that the Moving Defendants have offered legitimate, nondiscriminatory reasons for the adverse actions complained of, and the "presumption of retaliation [therefore] dissipates." *Ya-Chen Chen*, 805 F.3d at 70. The burden shifts back to Plaintiff to establish "that the desire to retaliate was the but-for cause of the challenged employment action." *Id*. (citation omitted).

### c.    Pretext for Retaliation

At the third stage of the *McDonnell Douglas* burden-shifting analysis, "a plaintiff alleging retaliation must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision."  *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846–847 (2d Cir. 2013) (quoting *Nassar*, 570 U.S. at 348, 360). "'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that

the adverse action would not have occurred in the absence of the retaliatory motive." *Id*. at 846. "[A] plaintiff may rely on evidence comprising [her] prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Id*. at 847. Pretext may be shown, among other things, "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate" nondiscriminatory reasons for its action. *Id*. at 846.

Here, with respect to (1) the substantiated complaint against Plaintiff, (2) Plaintiff's negative performance review, and (3) Plaintiff's termination, Plaintiff has failed to meet her burden at this stage of the analysis. Plaintiff has not offered any direct evidence of a retaliatory animus by CNYPC suggesting pretext, such as remarks or communications tethering CNYPC's actions to Plaintiff's protected conduct. Furthermore, there is nothing in the record to suggest a retaliatory motivation on the part of CNYPC, notwithstanding Plaintiff's denials that she engaged in the inappropriate conduct alleged to have given rise to these adverse actions. *See Laiscell v. Bd. of Educ., City of Hartford*, No. 24-11-CV, 2024 WL 5182916, at *2 (2d Cir. Dec. 20, 2024) ("[W]hen considering the legitimacy of an employer's reason for an employment action, we look to what motivated the employer rather than to the truth of the allegations against the plaintiff.") (quoting *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 275 (2d Cir. 2016)); *see also Khazin v. City of New York*, No. 24-1236-CV, 2025 WL 1091241, at *3 (2d Cir. Apr. 8, 2025) (concluding that plaintiff's "vehement[] refut[ation] [of] each disciplinary charge he was issued," without more, was insufficient to demonstrate falsity or pretext). Nor has Plaintiff pointed the Court to any inconsistencies or contradictions that would suggest pretext.

Plaintiff's only argument to establish causation with respect to these adverse actions is their temporal proximity with her protected activities. However, the Second Circuit has made clear that

temporal proximity "alone is insufficient to defeat summary judgment at the pretext stage." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013).  In the absence of any additional evidence, no factfinder could reasonably determine that Plaintiff's protected activities were the but-for cause of these adverse actions.  *See, e.g., Carr v. New York City Transit Auth.*, 76 F.4th 172, 182 (2d Cir. 2023) (concluding that although the plaintiff's "needs improvement" performance reviews constituted materially adverse actions, her claim failed at the third step because she could offer nothing more than temporal proximity to establish causation).

Because Plaintiff cannot establish pretext for the above referenced actions, and because Plaintiff's assignment to Building 39 does not independently constitute a material adverse action,[4] the Moving Defendants are entitled to summary judgment on Plaintiff's Title VII retaliation claims.

### 4.    Section 1983 – Equal Protection

The Moving Defendants seek dismissal of Plaintiff's Equal Protection claims brought pursuant to 42 U.S.C. § 1983 on the following bases: (1) The Eleventh Amendment bars Plaintiff's Equal Protection claim against CNYPC, (2) Plaintiff cannot raise a triable issue of fact to support individual liability against Helmer and Palmer under section 1983, and (3) Plaintiff's Equal Protection claims are duplicative of her Title VII claims. Dkt. No. 68-2 at 39-43.  Plaintiff fails to respond to any of these arguments in opposition to the motion.  Dkt. No. 86.  In her reply papers to her own motion for partial summary judgment, Plaintiff contends that she has raised triable issues of fact to support individual liability against Helmer and Palmer, because they each took

---

[4] *See Tromblee v. New York State Off. for People with Developmental Disabilities*, No. 1:19-cv-00638 (BKS/CFH), 2023 WL 2655471, at *23 (N.D.N.Y. Mar. 27, 2023) ("Given the aggregate nature of Plaintiff's claim, she must logically show but-for causation for each action.").

actions against her.  Dkt. No. 7-8.

### a.    Eleventh Amendment Immunity

"The Eleventh Amendment prohibits the 'Judicial power of the United States' from extending to 'any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (quoting U.S. Const. amend. XI.).  "This jurisdictional bar also immunizes a state entity that is an 'arm of the State.'" *In re Deposit Ins. Agency*, 482 F.3d at 617 (citing *N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.*, 547 U.S. 189 (2006)); *see also Kisembo v. New York State Off. of Child. & Fam. Servs.*, 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) ("'As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress.'" (quoting *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219–20 (N.D.N.Y. 2014)).

Courts in this Circuit have repeatedly stated that OMH and CNYPC are arms of the state. *See Abdul-Matiyn v. Pataki*, No. 9:06-cv-1503 (DNH/DRH), 2008 WL 974409, at *14 (N.D.N.Y. Apr. 8, 2008) (CNYPC "is an arm of the state" for Eleventh Amendment purposes); *Harvey v. Sawyer*, No. 09-cv-598 (FJS/DRH), 2010 WL 3323665, at *10 (N.D.N.Y. July 22, 2010) (noting that psychiatric centers such as CNYPC "have also been deemed arms of the state and protected by the Eleventh Amendment"); *Whitley v. Dill*, No. 9:25-cv-0896 (ECC/PJE), 2025 WL 2306506, at *2 (N.D.N.Y. Aug. 11, 2025) (same).  Because neither the State of New York nor its agencies have consented to be sued in federal court under Section 1983, and Congress has not abrogated the state's immunity, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977), Plaintiff's Equal Protection claims for damages against CNYPC are barred by the Eleventh Amendment, and the Moving Defendants are entitled to summary judgment on this claim.

Plaintiff's Eleventh Claim alleges retaliation in violation of the Equal Protection Clause under 42 U.S.C. § 1983 against all of the Defendants in their official capacities "solely for prospective injunctive relief." Dkt. No. 4 ¶¶ 115-17. Specifically, Plaintiff seeks to enjoin Hemler, Palmer, and Calkins from "retaliating against Plaintiff post-employment by providing unverified or baseless negative formal or informal employment references to potential future employers of Plaintiff." *Id*. at ¶ 117. The Moving Defendants do not distinguish this claim from Plaintiff's Equal Protection claims for damages in their request for summary judgment, nor do they present any argument as to whether this claim falls under the *Ex parte Young* exception to Eleventh Amendment Immunity. The *Ex parte Young* doctrine provides "a narrow exception" to Eleventh Amendment immunity "that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Unkechaug Indian Nation v. Seggos*, 126 F.4th 822, 829 (2d Cir. 2025), *cert. denied*, No. 24-1240, 2025 WL 2823807 (U.S. Oct. 6, 2025) (quoting *Silva*, 47 F.4th at 84). "[I]n determining whether the *Ex parte Young* doctrine applies . . . a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id*. (quoting *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004)).

Here, the Court need not determine whether the *Ex parte Young* doctrine applies as an exception to Eleventh Amendment immunity with respect to Plaintiff's claim for injunctive relief against the Moving Defendants in their official capacities because, as further set forth below, Plaintiff's retaliation claims brought pursuant to § 1983 do not withstand summary judgment on their merits.

### b. Duplicity of Claims

"A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, such as a claim for denial of equal protection, so long as the § 1983 claim is based on a distinct violation of a constitutional right." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks and citations omitted). Here, Plaintiff's Third and Fourth Claims are brought pursuant to § 1983 and allege violations of her equal protection rights under the Fourteenth Amendment. Dkt. No. 4 ¶¶ 99-102. Because Plaintiff's Amended Complaint clearly bases her § 1983 claims on violations of her constitutional rights, Defendants' argument in this regard is unavailing. *See Richardson v. New York State Off. of Mental Health,* No. 6:11-cv-1007 (GLS/ATB), 2014 WL 3818928, at *9 (N.D.N.Y. Aug. 4, 2014) (rejecting similar argument by Defendants seeking to dismiss § 1983 claims because they are based on the same factual allegations as Title VII claims); *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994) (recognizing that "a § 1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual harassment in the workplace.").

### c. Individual Liability of Helmer and Palmer

"[S]tate and local officials can be held individually liable under 42 U.S.C. § 1983 for violating the Equal Protection Clause of the Fourteenth Amendment by discriminatory acts against those who work under them." *Raspardo*, 770 F.3d at 113–14. "'[T]he Equal Protection Clause protects such employees from sex-based workplace discrimination, including hostile work environments and disparate treatment,' and retaliation." *Oliver*, 2020 WL 1989180, at *45 (quoting *Raspardo*, 770 F.3d at 114).

Most of the standards applicable to Title VII claims, discussed in detail above, also apply to Section 1983 equal protection claims. *See, e.g., Fincher v. Depository Trust & Clearing Corp*., 604 F.3d 712, 720 (2d Cir. 2010); *Patterson*, 375 F.3d at 225. However, the Second Circuit has

noted "several significant differences" between the two claims. *See Patterson,* 375 F.3d at 225.

As relevant to this action, and as previously alluded to, individuals may be held liable under §

1983 for certain types of discriminatory acts, unlike Title VII. *Id.* at 226 (citations omitted).

Furthermore, "although in certain circumstances a Title VII claim may be established through

proof of a defendant's mere negligence, without a showing of discriminatory intent, a plaintiff

pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination

was intentional." *Id.* (cleaned up).

### i.    Retaliation

In the Second Circuit, "a claim for retaliation for a complaint that alleged discrimination is

actionable under § 1983" because "retaliation is a form of discrimination," and "the elements of a

retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII."

*Vega*, 801 F.3d at 81.  Thus, for the same reasons Plaintiff's Title VII retaliation claims are

dismissed, the Moving Defendants are entitled to summary judgment on Plaintiff's parallel § 1983

retaliation claims.

### ii.    Hostile Work Environment

While "[h]ostile work environment claims under Title VII . . . look to the circumstances of

the plaintiff's employment, and hold the employer liable when the misconduct in the workplace is

so severe as to alter the terms and conditions of the plaintiff's employment," *Raspardo*, 770 F.3d

at 114 (citing *Harris*, 510 U.S. at 21), "[s]ection 1983 . . . applies by its terms only to individual

'persons' responsible for violating plaintiffs' rights." *Id*. Thus, "[i]n order to . . . 'establish

individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff

to be deprived of a federal right.'" *Id*. (citing *Back v. Hastings on Hudson Union Free School Dist.*,

365 F.3d 107, 122 (2d Cir. 2004). "If a defendant has not personally violated a plaintiff's

constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Id*. at 114–15.

Traditionally, a plaintiff advancing a claim of § 1983 discrimination in the Second Circuit would have to prove a defendant's personal involvement by providing evidence that: (1) the defendant was a direct participant in the alleged violation; (2) the defendant failed to correct the violation after learning about it through a report or appeal; (3) the defendant created or allowed to continue a policy or custom under which the violation occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the violation; or (5) the defendant exhibited deliberate indifference by not acting on information suggesting that the violations were occurring. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

However, the continued viability of that test for personal involvement was called into question in *Ashcroft v. Iqbal*, when the Supreme Court held that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." 556 U.S. 662, 676 (2009). The Second Circuit subsequently addressed any remaining uncertainty in *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020), concluding that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (internal citations and quotation marks omitted). That is to say, "[t]he violation must be established against the supervisory official directly."

Here, Plaintiff has failed to raise a genuine dispute of material fact concerning Defendant Palmer's individual liability for a hostile work environment under § 1983. Viewing the facts in the light most favorable to the non-moving party, Palmer was made aware of Plaintiff's initial complaints about sexual harassment by Calkins in January 2020. Dkt. No. 83 ¶ 14. Almost

immediately thereafter, Plaintiff's allegations were reported to GOER for investigation. Dkt. Nos. 83 ¶ 14; 85 ¶ 14. Otherwise, on April 28, 2020, Plaintiff sent an email to Defendant Palmer advising that Calkins was working on "[her] side of the building today." Dkt. Nos. 83 ¶ 38; 70-2 at 21. Palmer subsequently directed the Nurse Administrator to inform Plaintiff that she "is scheduled in building 41" for her next shift, "due to staffing needs." Dkt. No. 79-12 at 2. Plaintiff contends that although Nurse Administrators were responsible for preparing nurse schedules, that "higher nursing management" was also involved in setting or adjusting schedules. Dkt. No. 85 ¶ 54. Plaintiff does not allege that Defendant Palmer was directly involved in any harassing conduct. Even assuming that Defendant Palmer's decision to assign her to a different building contributed to a hostile work environment, Plaintiff has failed to come forward with evidence showing that Palmer was anything more than negligent in responding to Plaintiff's complaints. "As the Second Circuit has held, mere negligence in the supervision of subordinates who commit wrongful acts is insufficient to give rise to individual liability under Sections 1981 and 1983." *Johnson v. Cnty. of Nassau*, No. 10-cv-06061, 2014 WL 4700025, at *19 (E.D.N.Y. Sept. 22, 2014) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) ("At most, the Garzarellis were negligent in maintaining their restaurant's anti-discrimination policy. Even if this were the case, such negligence does not constitute the 'personal involvement' or 'affirmative link' necessary to support a claim of individual liability.")); *Fellah v. City Univ. of New York*, No. 20 Civ. 6423, 2022 WL 4619902, at *6 (S.D.N.Y. Sept. 30, 2022) ("Fellah has not pleaded Miller's personal involvement in a hostile work environment because at most his allegations establish that Miller failed to take sufficient action to remedy Fellah's work situation, and because they fail to allege that she did anything to actively create a hostile work environment for Fellah. These allegations, without more, are insufficient to allege Miller's personal involvement under section 1983."); *cf.*

*Patterson*, 375 F.3d at 229 ("Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring."). Accordingly, the Moving Defendants are entitled to summary judgment on Plaintiff's § 1983 hostile work environment claim against Defendant Palmer.

With respect to Defendant Helmer, the record viewed in the light most favorable to Plaintiff establishes that Helmer was also made aware of Plaintiff's initial complaints in January 2020, and that Helmer confirmed the allegations were forwarded to GOER for investigation. Defendant Helmer was also aware of allegations that Calkins engaged in similar conduct with other nurse staff. In February 2020, Helmer was made aware that Plaintiff continued to feel unsafe as a result of Calkins's conduct, but did not permit alteration of Plaintiff's schedule. Calkins and Plaintiff were, however, separated to work in different areas of Building 39. Helmer was also a part of the decision to assign Plaintiff to work in Building 41 in April 2020.

In her opposition papers, Plaintiff entirely fails to respond to the Moving Defendants' argument concerning the personal involvement of Defendant Helmer. *See* Dkt. No. 86. In Plaintiff's own motion for summary judgment, Plaintiff claims that in addition to the above referenced conduct, Helmer also "threatened [Plaintiff] that she needed to work in" Building 41. Dkt. No. 95 at 6. This factual allegation does not appear with supporting evidence anywhere in Plaintiff's Response to Defendants' Rule 56.1(a) Statement, Statement of Additional Material Facts, or her own Statement of Material Facts. This representation appears to stem from Plaintiff's deposition testimony that during a call between Plaintiff and Helmer on April 30, 2020 concerning Plaintiff's objection to her assignment to Building 41, Helmer "threatened" Plaintiff by asking her,

"do you want me to tell H.R. that you're not coming back[?]" Dkt. No. 68-3 at 278, 280. On this record, however, Plaintiff's assertion that Helmer asked if she was coming back to work does not amount to evidence supporting Helmer's personal involvement in actively creating a hostile work environment.

Plaintiff's allegations concerning the personal involvement of Helmer are also most appropriately characterized as the failure to take sufficient action to remedy Plaintiff's work situation. As previously discussed, these allegations are insufficient to allege personal involvement under section 1983. Moreover, because it is undisputed by Plaintiff that Calkins was the source of the harassment directed at Plaintiff, "a jury could not reasonably conclude that [Palmer or Helmer's] deliberate indifference was the *but-for cause* of the hostile work environment." *Tromblee*, 2023 WL 2655471, at *18 (citing *Naumovski*, 934 F.3d at 222 (recognizing that negligent supervision could not be the but-for cause of hostile work environment)). Accordingly, the Moving Defendants are entitled to summary judgment on Plaintiff's § 1983 hostile work environment claim against Defendant Helmer.

### 5. NYSHRL

In her Seventh and Eighth Claims, Plaintiff alleges retaliation and a hostile work environment in violation of the New York Human Rights Law against "all defendants in their individual capacities." Dkt. No. 4 ¶¶ 107-10. In her Ninth and Tenth Claims, Plaintiff alleges aiding and abetting a hostile work environment and retaliation in violation of the New York Human Rights Law against the same defendants. *Id.* at ¶¶ 111-14. The Moving Defendants seek dismissal of these claims against Helmer and Palmer in their individual capacities, arguing that Plaintiff has failed to establish a prima facie case that she was subjected to a hostile work environment, and that they took appropriate remedial action to address Plaintiff's complaints. Dkt. No. 68-2 at 22-24. Plaintiff contends, without any further explanation, that because "the legal standard under New

York's Human Rights Law for hostile work environment claims was lessened for all plaintiffs . . .

in October 2019, this Court should find in favor of [Plaintiff.]"  Dkt. No. 95 at 8.

It is unclear whether Plaintiff's Amended Complaint asserts a NYSHRL claim against

CNYPC.  However, even if Plaintiff did intend to assert such a claim against her employer, that

claim would not survive because CNYPC is shielded by sovereign immunity.  *See Doe v. NYS Off.*

*of Child. & Fam. Servs.*, No. 1:20-cv-01195 (BKS/CFH), 2021 WL 2826457, at *13 (N.D.N.Y.

July 7, 2021) (recognizing that "New York has not waived its Eleventh Amendment immunity

against NYSHRL suits for damages in federal court."); *Baez v. New York*, 629 F. App'x 116, 118

(2d Cir. 2015) ("New York State has not consented to be sued in federal court under the

NYSHRL.") (citing *Pennhurst*, 465 U.S. 89, 99 n. 9 (1984)).

With respect to Defendants Helmer and Palmer, under the NYSHRL an individual can be

held liable either as an employer who has "an ownership interest in the relevant organization or

the power to do more than carry out personnel decisions made by others," or as an aider and abettor

"if they personally participate in the conduct giving rise to a discrimination claim." *Peck v. Cnty.*

*of Onondaga, New York*, 21-cv-0651, 2021 WL 3710546, at *13 (N.D.N.Y. Aug. 20, 2021)

(quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012), *Feingold v. New*

*York*, 366 F.3d 138, 158-59 (2d Cir. 2004)).  "[A] coworker cannot aid and abet the employer if the

employer itself cannot be held liable." *Peck*, 2021 WL 3710546, at *14 (citing *Jain v. McGraw-*

*Hill Cos., Inc.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011)). [5]

---

[5] "Courts within this circuit are split on the question of whether a finding that sovereign immunity
bars a claim against a plaintiff's employer means that an individual cannot be held liable as an
aider or abettor of that state employer's conduct." *Dawkins v. State Univ. of New York at Cortland*,
No. 5:23-cv-1163 (GTS/MJK), 2024 WL 3377938, at *7 (N.D.N.Y. July 11, 2024) (comparing
cases assessing whether a dismissal of the primary NYSHRL claim against a state employer based
on sovereign immunity precludes an aider/abettor claim against an individual).  For the reasons set

Here, Plaintiff's NYSHRL claims against Defendants Helmer and Palmer assert aider and abettor liability.  In order for a defendant to be liable as an aider and abettor, a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal. *Pompey v. Cnty. of Westchester*, No. 23-cv-9337, 2025 WL 2723868, at *18 (S.D.N.Y. Sept. 24, 2025) (citing *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1013 (N.Y. 2004); *Kelly G. v. Bd. of Educ.*, 952 N.Y.S.2d 229, 232 (N.Y. App. Div. 2012); *see also Benson v. Otis Elevator Co.*, 557 F. App'x 74, 77 (2d Cir. 2014); *Warren v. Ultimate Fitness Grp., LLC*, No. 19-cv-10315, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021).

With respect to Plaintiff's NYSHRL claim premised on the existence of a hostile work environment, historically "claims brought under [the NYSHRL] were analytically identical to claims brought under Title VII." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (citations and quotation marks omitted), *cert. denied*, 565 U.S. 1260 (2012). However, "[i]n August 2019, the NYSHRL was amended to eliminate the 'severe or pervasive' standard for such claims." *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 334 n.9 (S.D.N.Y. 2020).  Because Plaintiff's NYSHRL claim for a hostile work environment is based on conduct occurring after October 11, 2019, the "'more permissive [standard], omitting the requirement that the complained-of conduct be severe or pervasive,'" is applicable. *Friederick v. Passfeed, Inc.*, No. 21-cv-2066, 2022 WL 992798, at *6 (S.D.N.Y. Mar. 31, 2022) (quoting

---

forth in *Dawkins,* and in the absence of any argument by the Moving Defendants as to this issue, this Court declines to preclude Plaintiff's aider/abettor claims against Defendants Helmer and Palmer based solely on the application of Eleventh Amendment immunity to CNYPC.

*Moazzaz v. MetLife, Inc.*, No. 19-cv-10531, 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021)).  In any event, to the extent the Court finds that a genuine dispute of material fact exists as to the existence of a hostile work environment under the stricter Title VII standard, Plaintiff's NYSHRL claim based on an aider and abettor theory is not subject to dismissal for failure to establish a primary violation of a hostile work environment.

This is not the case for Plaintiff's NYSHRL aiding and abetting claims based on retaliation. Until October 11, 2019, employment retaliation claims asserted under Title VII and the NYSHRL were identically analyzed. *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 n. 2 (2d Cir. 2024) ("'The standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL.'" (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)). "Since the NYSHRL was amended effective October 11, 2019, NYSHRL retaliation claims remain analytically identical to Title VII retaliation claims, yet subject to a somewhat lesser burden insofar as the plaintiff need not plead any adverse employment action per se, but only that 'something happened that would be reasonably likely to deter a person from engaging in protected activity.'" *Alford v. NFTA-Metro*, No. 21-cv-737, 2025 WL 1885679, at *10 (W.D.N.Y. Apr. 11, 2025), *report and recommendation adopted*, 2025 WL 1779101 (W.D.N.Y. June 27, 2025) (quoting *Kulick v. Gordon Property Group, LLC*, 2025 WL 448333, at * 13 (S.D.N.Y. Feb. 7, 2025)).

Here, with the exception of Plaintiff's assignment to Building 41, the Moving Defendants are entitled to summary judgment on both the Title VII and NYSHRL retaliation claims, because Plaintiff cannot establish a genuine dispute of material fact as to pretext.  Otherwise, for the reasons previously set forth Plaintiff's assignment to building 41 does not meet the requirements of an adverse employment action, even under the NYSHRL's "somewhat lesser burden."  Thus, because

Plaintiff has not established a primary violation of retaliation, Defendants Helmer and Palmer cannot be held liable for aiding and abetting retaliation under the NYSHRL.

The appropriate inquiry is therefore whether a reasonable juror could conclude that Defendants Helmer and Palmer aided and abetted a hostile work environment under the NYSHRL. According to the language of the statute, "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." Exec. Law § 296(6). Individuals may be held liable under the NYSHRL if they have "actually participated in the conduct giving rise to the claim." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (quoting *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)).

When it comes to supervisor liability, courts have held that a complete failure to investigate or remediate can constitute "active participation" to support an aiding and abetting claim. *See Feingold*, 366 F.3d at 157–158 (summary judgment denied on § 296 claims where defendants took no action to remedy such behavior of which they were aware); *Gallo v. Wonderly Co., Inc*., No. 1:12-cv-1868, 2014 WL 36628, *8 (N.D.N.Y. 2014) (a person may be liable under § 296 for taking no action to remedy discriminatory behavior). Other courts have further concluded that a supervisor may be held individually liable where attempted remedial measures proved insufficient, however this seems to be up for debate. *See Warren v. Ultimate Fitness Group, LLC*, No. 19-cv-10315, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021) (citation omitted) (finding that "[f]ailing to respond to others' violations of the NYSHRL does not, without more, support aiding and abetting liability," but that a supervisor may be individually liable if remedial "failures allow, or even encourage, a primary violation to continue"); *Lewis v. Triborough Bridge and Tunnel Auth*., 77 F. Supp. 2d 376, 384 (S.D.N.Y.1999) ("the case law establishes beyond cavil that a

41

supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL § 296(6)); *but see Patrick v. Adjusters International, Inc.*, No. 16-cv-2789, 2017 WL 6521251, at *6 (E.D.N.Y. Dec. 18, 2017) (citation omitted) ("efforts to remediate . . . conduct that proved to be ineffective" do not "rise to the level of 'active participation' in discrimination for which courts have previously imposed liability due to a failure to investigate").

Here, for the reasons previously explained, Plaintiff has established a genuine dispute of material fact as to whether Defendants' Helmer and Palmer's conduct in conjunction with Calkins's harassment "allow[ed]" the underlying hostile work environment to continue. Accordingly, the Moving Defendants' motion for summary judgment is denied as to Plaintiff's NYSHRL claims against Defendants Helmer and Palmer for aiding and abetting a hostile work environment.

### B.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment on her hostile work environment claims brought pursuant to Title VII, § 1983, and the NYSHRL, arguing that that there are "no genuine issues of material fact as to whether Defendants' response to her January 22, 2020 complaint of workplace harassment was unreasonable as a matter of law." Dkt. No. 70-21 at 8. For the reasons previously set forth, the Moving Defendants are entitled to summary judgment on Plaintiff's § 1983 claims, thus Plaintiff's motion is denied to this extent. Plaintiff's motion for summary judgment is also denied as to her individual capacity Title VII hostile work environment claims because, as previously set forth, such claims are not permitted under the federal statute.

To the extent Plaintiff seeks summary judgment on her § 1983 and NYSHRL hostile work environment claims against Defendant Calkins, she has entirely failed to articulate any argument or basis on which summary judgment should be awarded, and the Court declines to do so on

Plaintiff's behalf.[6] *See Sands Harbor Marina Corp. v. Wells Fargo Ins. Services of Oregon, Inc.*, No. 09-cv-3855, 2013 WL 5295713, at *4 (E.D.N.Y. Sept. 18, 2013) ("It is not this Court's obligation to make a party's arguments for it or fill in the blanks on that party's behalf."); *Chui v. Am. Yuexianggui of Li LLC*, No. CV-18-5091, 2021 WL 4482656, at *3 (E.D.N.Y. July 26, 2021) ("The Court is not responsible for developing arguments on a party's behalf or addressing conclusory claims."). Accordingly, Plaintiff's motion is denied in this respect.

With respect to Plaintiff's surviving (1) Title VII hostile work environment claim against CNYPC, and (2) NYSHRL claims for aiding and abetting a hostile work environment against Defendants Helmer and Palmer, for the reasons previously set forth there are genuine issues of material fact as to whether Plaintiff suffered a gender-based hostile work environment, who created or permitted that environment to continue, and whether such conduct can be imputed to CNYPC. Accordingly, Plaintiff's motion for summary judgment on these claims is denied.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Moving Defendants' motion for summary judgment, Dkt. No. 68, is **GRANTED in part and DENIED in part;** and it is further

**ORDERED** that Plaintiff's motion for partial summary judgment, Dkt. No. 70, is **DENIED;** and it is further

---

[6] Plaintiff's notice of motion seeks an "order granting partial summary judgment in favor of Plaintiff and against Defendants on Plaintiff's First, Third, Fifth, Seventh and Ninth Claims set forth in her First Amended Complaint." Dkt. No. 70 at 1. However, the single argument raised in Plaintiff's Memorandum of Law is limited to the "defendants'" purported deficiency in responding to Plaintiff's complaints.

**ORDERED** that Plaintiff's Second Claim asserting retaliation in violation of Title VII is **DISMISSED as against Defendant CNYPC,** and it is further

**ORDERED** that Plaintiff's Third, Fourth, and Eleventh Claims asserting violations of Plaintiff's equal protection rights under §1983 are **DISMISSED as against Defendants CNYPC, Helmer and Palmer,** and it is further

**ORDERED** that Plaintiff's Fifth and Sixth Claims asserting Title VII liability against Defendants Helmer, Palmer, and Calkins in their individual capacities are **DISMISSED,** and it is further

**ORDERED** that Plaintiff's Seventh and Eighth Claims asserting violations of the NYSHRL are **DISMISSED as against Defendants CNYPC, Helmer and Palmer,** and it is further

**ORDERED** that Plaintiff's Tenth Claim for aiding and abetting retaliation in violation of the NYSHRL is **DISMISSED as against Defendants CNYPC, Helmer and Palmer;** and it is further

**ORDERED** that the following claims shall proceed to trial:  1) Plaintiff's Title VII hostile work environment claim against Defendant CNYPC, 2) Plaintiff's NYSHRL claims against Defendants Helmer and Palmer for aiding and abetting a hostile work environment, and 3) Plaintiff's remaining claims against Defendant Calkins.

**IT IS SO ORDERED.**

Dated: January 21, 2026

_____
Elizabeth C. Coombe
U.S. District Judge